OPINION
{¶ 1} Travelle Scott appeals from his conviction in the Dayton Municipal Court of criminal trespass, in violation of R.C. 2911.21(A)(3). He was sentenced to thirty days in jail and a fine of $250.00 plus court costs. The trial court suspended both the imprisonment and the fine and placed Scott on unsupervised probation for a period not to exceed one year.
 {¶ 2} On March 6, 2003, Scott was arrested by Dayton Police Officers, based on his alleged unauthorized presence at property owned by the Dayton Metropolitan Housing Authority ("DMHA"). Pursuant to an arrangement between the DMHA and the Dayton Police Department, police officers and sheriffs have the authority to act as agents of DMHA and to issue criminal trespass notices to individuals who have caused problems on DMHA property. Previously, on September 23, 2002, and December 13, 2002, Scott had been given trespass notices and advised that he was not to enter any lands or premises owned by DMHA.
 {¶ 3} On the date that Scott was arrested, Scott's girlfriend, Kimberly Fletcher, resided in an apartment at 126 West Fifth Street, known as Wilkinson Plaza, which was property owned by DMHA. Due to Scott's inability to visit her at her residence because of the trespass notices, Fletcher had decided to move. At approximately 9:30 a.m. on March 6, 2003, Scott and his uncle, Michael Ogle, began helping Fletcher move her belongings from her apartment on the thirteenth floor to Ogle's pick-up truck parked behind the building. A second vehicle, driven by Tayon Driscoll, arrived later to help transport additional belongings. At approximately 2:15 p.m., Officer Matthew Beavers, while on a plain clothes assignment, saw Driscoll's car parked behind Fletcher's building. He further observed Scott carrying items out of the building and placing them into Driscoll's vehicle. After running the license plate number of this vehicle, the officer learned that Driscoll was known to drive the car and that he had been trespassed from DMHA property in December of 2002. Officer Beavers summoned a uniformed crew, and the three officers approached Driscoll and Scott. After identifying Scott, the police found that he had also been trespassed by DMHA. The officers arrested Driscoll and Scott for criminal trespass.
 {¶ 4} On appeal, Scott asserts one assignment of error:
 {¶ 5} "The trial court erred in finding appellant guilty of criminal trespass where the state failed to prove that appellant, who had been invited to a tenant's DMHA Apartment, had no privilege to enter the tenant's apartment and routes of Ingress and Egress."
 {¶ 6} R.C. 2911.21(A)(3) provides that "[n]o person, without privilege to do so, shall * * * [r]ecklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access." "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." For purposes of criminal trespass, privilege "includes permission to enter the premises given by a resident of the premises." State v. Clelland (1992), 83 Ohio App.3d 474, 490,615 N.E.2d 276, citing Mariemont v. Wells (1986), 33 Ohio Misc.2d 9,514 N.E.2d 764.
 {¶ 7} Scott claims that the state had failed to prove that he was on DMHA property "without privilege" and thus the trial court erred in finding him guilty of criminal trespass. He asserts that as long as an invited guest remains within the lawful and proper bounds of his invitation, he cannot be guilty of criminal trespass. In support of his contention, Scott cites to State v. Hohman (1983), 14 Ohio App.3d 142,470 N.E.2d 162; State v. Hites, Allen App. No. 1-2000-22, 2000-Ohio-1695; and City of Kent v. Hermann (1996), Portage App. No. 95-P-0042.
 {¶ 8} The state responds that, as a procedural matter, Scott has waived all issues on appeal except plain error, and thus we cannot consider the substance of his assignment of error unless we find that it falls under the plain error doctrine. See Crim.R. 52. As for the merits of Scott's appeal, the state contends that there was no evidence offered at trial to prove that Scott was invited onto the DMHA property or that Fletcher was in fact a tenant. In addition, although recognizing the cases cited by Scott, the state asserts that we have previously held inCity of Dayton v. Gaessler (Dec. 29, 2000), Montgomery App. No. 18039, that a DMHA tenant derives her right to invite guests from DMHA itself, thereby preventing the tenant from giving permission to an individual listed on the trespass list to enter the property over DMHA's objection.
 {¶ 9} Upon review of the record, we agree with Scott that the record supports the conclusion that he was given permission by Fletcher, a tenant at the property, to be on the Wilkinson Plaza property. Fletcher and Ogle both testified that Scott was Fletcher's boyfriend and that he was at the property helping her move out of her apartment. Ogle testified that he and Scott had been helping Fletcher move for close to four hours, plus an hour-long break for lunch, at the time that Scott was arrested. Throughout that period, Ogle and Scott made repeated trips from the car to Fletcher's apartment, with Fletcher running the elevator for them. Although there was no testimony that Scott was at Wilkinson Plaza at Fletcher's express invitation, the testimony strongly indicates that Fletcher had invited Scott to assist her and that he was repeatedly given access to her apartment with her assistance and permission. The fact that Scott's uncle and later his friend provided the transportation for Fletcher's belongings further suggests that Fletcher did not just "show up." In addition, Ogle and Fletcher both testified that Scott did not venture into any areas of the property other than those necessary to help Fletcher move. Thus, the evidence supports Scott's assertion that he remained within the scope of Fletcher's invitation. Finally, Fletcher testified that she had a lease with DMHA, which was submitted without the signature page as Defendant's Exhibit C. Although Fletcher indicated that the lease expired in March 2003, the lease provided that it would automatically renew for successive one year terms, and Fletcher indicated that she had moved out of the apartment due to Scott's inability to visit her at the building. Based on this evidence, there is no implication that Fletcher's lease had expired prior to her moving out and that she was no longer a tenant at that time.
 {¶ 10} We therefore turn to whether Fletcher, as a tenant of DMHA property, had a right to invite Scott onto the Wilkinson Plaza property over the objections of DMHA, as demonstrated by the trespass notices. As mentioned by the parties, several appellate courts have recognized that "an individual invited into the rental unit by the tenant could not be guilty of trespassing on the owner's premises even though the owner expressly instructed the person not to come onto the property." Hermann,
supra. However, as argued by the state, we believe that this case is governed by our decision in Gaessler.
 {¶ 11} In Gaessler, the defendant, R. Lee Gaessler, had been given a criminal trespass notice by a Dayton police officer and instructed that he would not be permitted on DMHA property. Approximately one month later, the manager of the DMHA apartment complex noticed a van that he knew to belong to the defendant parked illegally on the property. The property manager located Gaessler in the apartment of a tenant, Helen Poole. The manager left, had his assistant manager contact the police, and waited for the police outside his building. When Gaessler emerged, an altercation ensued between him and the manager. Gaessler was subsequently arrested and convicted of criminal trespass and assault.
 {¶ 12} At trial, the court precluded Gaessler from cross-examining the property manager about a tenant's right to invite a trespassed person onto DMHA property. As indicated in our opinion: "In argument outside of the presence of the jury, the [trial] court stated:
 {¶ 13} ". . . I agree in general that a tenant in — in any uh, leasehold agreement would have the right to extend the privilege to have visitors to certain individuals. However, uh, I do not believe that this right is — has no limits. And in this case if the prosecution establishes that Mr. Gaessler was served with a notice — a trespass notice not to go on any DMHA properties, then that was a limitation on her right and the DMHA authorities represented by Mr. Bradley in this case, have introduced evidence, the prosecutor has introduced evidence that a trespass notice was served on Mr. Gaessler prior to the date of October 1st when the trespass allegedly took place. * * *
 {¶ 14} ". . . at that point, Mr. Gaessler's privilege to enter the DMHA premises then was removed if the Jury finds that the trespass notice was served on him prior to October 1st, then his privilege to enter the premises was removed . . . and that's why I must sustain the objection and not allow you to go into that."
 {¶ 15} On appeal, we affirmed the trial court's ruling, stating:
 {¶ 16} "We agree with the reasoning of the trial court. Poole derived her rights as a tenant from the DMHA. Consequently, Poole's rights as a tenant are subject to DMHA's authority to bar Gaessler from the property because Poole took her authority from the DMHA. Further, the City notes that the DMHA trespass program has been held a valid method of law enforcement on DMHA property. See Mark Brown, et al., v. DaytonMetro. Hous. Auth., et al. (Aug. 25, 1993), S.D.Ohio No. C-3-93-037, unreported. Gaessler's only legal recourse was to appeal the trespass notice, which he did not do.
 {¶ 17} "Furthermore, there is no evidence that Gaessler was actually invited into Poole's apartment building. Gaessler testified that he was planning to pick Poole up in front of the building to take her to a doctor's appointment. When Poole failed to appear, Gaessler proceeded inside the building to Poole's apartment."
 {¶ 18} Scott asserts that Gaessler is distinguishable from the present circumstances, because the defendant in Gaessler committed acts of violence against the property manager while on the property. Scott therefore argues that "Gaessler should not stand for the proposition the DMHA's criminal trespass policy prohibits tenants from inviting guests, thereby giving them privilege to enter DMHA's property, in all cases." We disagree. In Gaessler, we did not base our decision on the fact that the defendant was not actually invited into the building and subsequently assaulted the property manager, although we recognized such was the case. Rather, we explicitly stated that the tenant derived her rights as a tenant from DMHA and, consequently, her rights to invite guests were subject to DMHA's right to preclude certain guests by means of the criminal trespass policy.
 {¶ 19} Scott asserts that the lease at issue does not incorporate the criminal trespass policy. He further argues that the Federal Housing Act prohibits public housing leases from including "unreasonable terms and conditions" and that regulations of the United States Department of Housing and Urban Development ("HUD") require that public housing leases provide for "reasonable accommodation" of tenant's guests. Fletcher's lease with DMHA provided for "reasonable accommodations of Tenant's guests or visitors for a period not exceeding fourteen (14) days each year." However, Fletcher's lease further provided "Tenant shall abide by all necessary and reasonable regulations issued by DMHA for the benefit and well-being of the housing project and the Tenants," such as the Statement of Leasing and Occupancy Policy, the Guide Book for DMHA Tenants, the Pet Ownership Policy, and "specific rules adopted for the particular project in which Tenant resides." Thus, Fletcher's rights as a tenant were subject to reasonable DMHA regulations. DHMA's criminal trespass policy has been found to be a reasonable policy in furtherance of DMHA's statutory and contractual duty to "maintain the dwelling unit and the project in decent, safe and sanitary conditions." See Thompsonv. Ashe, 250 F.3d 399, 407 (6th Cir. 2001) (banning individuals with criminal histories from entering housing authority property reasonably advances the goals of suppression and prevention of crime in public housing); Virginia v. Hicks (2003), 123 S.Ct. 2191, 156 L.Ed.2d 148
(trespass policy of Richmond Redevelopment Housing Authority was not invalid under First Amendment overbreadth doctrine; appellant did not show that "the RRHA trespass policy as a whole prohibit[ed] a `substantial' amount of protected speech in relation to its many legitimate applications"). We emphasize that Fletcher was aware of the DMHA criminal trespass policy and of the fact that Scott had been given trespass notices, thus barring him from DMHA property, pursuant to that policy. Therefore, we conclude that Fletcher could not validly invite Scott, an individual on the criminal trespass list, to her DMHA residence in contravention of DMHA's trespass notices to him. Accordingly, we find no plain error, or any error for that matter, in the determination that Scott was on DMHA property "without privilege."
 {¶ 20} The assignment of error is overruled.
 {¶ 21} The judgment of conviction will be affirmed.
BROGAN, J. and GRADY, J., concur.