**[Cite as *State v. Smith*, 2012-Ohio-4861.]**

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                      :

      Plaintiff-Appellee          :       C.A. CASE NO. 25048

vs.                           :       T.C. CASE NO. 11 CRB 11220

GARY W. SMITH             :       (Criminal Appeal from City
                                       of Dayton Municipal Court)

      Defendant-Appellant     :

. . . . . . . . .

**O P I N I O N**

Rendered on the 19th day of October, 2012.

. . . . . . . . .

Stephanie L. Cook, Chief Prosecutor, by Garrett P. Baker, Assistant City Prosecutor, Atty. Reg. No. 0084416, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

Katherine D. Moellman, Atty. Reg. No. 0085054, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1}   Defendant Gary Smith appeals from his conviction in the Dayton Municipal Court for criminal trespass, R.C. 2911.21(A)(3), a misdemeanor of the fourth degree.

{¶ 2}   St. Mary Development is a non-profit organization that provides housing for senior citizens and others in need of assistance. St. Mary manages several properties in the Dayton area, including Marvin Gardens. Timothy Grieshop is the director of asset management for St. Mary, and he

manages Marvin Gardens. In that role, Grieshop has the authority to "trespass" individuals from the property: that is, to order them off and to stay off the premises.

{¶ 3}  On September 12, 2011 Dayton police were called to Lisa Moore's apartment at Marvin Gardens, where Defendant was fighting with Moore's son, causing damage to the apartment. As a result of the fight, the Dayton police were called. Officer Jezioro arrested Defendant for assault. Grieshop told Defendant, in the presence of Officer Jezioro, that Defendant was trespassed from Marvin Gardens and was not allowed to return. Officer Jezioro advised Defendant that he was officially trespassed from Marvin Gardens, the information would be placed in the police computer system, and if Defendant returned, he would be arrested for trespass. Defendant became upset and told Officer Jezioro that his girlfriend lived at Marvin Gardens and that he would not stop visiting her.

{¶ 4}  On November 14, 2011, Defendant returned to Marvin Gardens. It appears that Moore opened her door and allowed Defendant into her apartment. However, a short time later, Moore called the police from the fire station across the street and reported that Defendant was in her apartment and she wanted him to leave.

{¶ 5}  When Dayton Police Officers Jezioro and Smiley arrived, they spoke with Moore at the fire station before going to her apartment. Not being able to get into the locked front door, Officer Smiley made contact with Grieshop to ask for keys. As Officer Jezioro waited at the front door of the building, Defendant exited. Officer Jezioro arrested Defendant for trespass. Defendant repeatedly stated that he could not be arrested because Moore had invited him over.

{¶ 6}  The matter proceeded to a bench trial. Defendant testified that Grieshop never trespassed him from Marvin Gardens, and Grieshop never spoke to him on September 12, 2011. Defendant also denied that the police trespassed him from the property, claiming they merely cautioned him not to come around when Moore's son was present. Defendant was under the impression that he would only be trespassed if there was more trouble in the future.

{¶ 7}  Defendant explained that Moore has health problems, and he helps to care for her.  In the two months between his arrest for assault and his arrest for trespass, Defendant estimated that he visited Moore at Marvin Gardens on at least fifteen occasions.  He claimed that Grieshop was aware of at least one of those visits, but said nothing to Defendant about his presence.

{¶ 8}  Defendant testified that when he arrived at Moore's apartment on November 14, 2011 and rang her bell, Moore came to the front door of the building and let him in.  Once inside, Defendant was arguing with his daughter on the phone when Moore complained about her blood pressure.  Defendant responded, "I will deal with your blood pressure but please, I can't listen to both of you."  He ended the call with his daughter, and when he turned around, he saw that Moore had left the room.  Defendant looked around the apartment for Moore.  Not finding her, he looked outside and saw two police cars.  Defendant claimed that Moore "has a tendency to overreact to things sometimes," so he went outside to "figure out what's going on."

{¶ 9}  The trial court found Defendant guilty of trespass and sentenced him accordingly.  Defendant appeals, raising one assignment of error.

{¶ 10}  Defendant's assignment of error:

"THE TRIAL COURT ERRED IN CONVICTING GARY SMITH OF CRIMINAL TRESPASS IN VIOLATION OF R.C. 2911.21(A)(3) BY HOLDING THAT THE AGENT OF A LANDLORD MAY EXCLUDE AN INVITEE OF A LESSEE IN VIOLATION OF THE LESSEE'S GRANT OF PRIVILEGE."

{¶ 11}  Defendant was convicted of criminal trespass in violation of R.C. 2911.21(A)(3), which states in relevant part: "No person, without privilege to do so, shall * * * recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender * * *."

{¶ 12} "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). For purposes of criminal trespass, privilege "includes permission to enter the premises given by a resident of the premises." *State v. Clelland,* 83 Ohio App.3d 474, 490, 615 N.E.2d 276 (4th Dist. 1992).

{¶ 13} Defendant argues that he was at the Marvin Gardens property with the permission of Moore, a tenant of the property, and that Moore's permission to be present takes precedence over any right of the property owner to exclude his presence. However, we have previously held that because a tenant's right to invite others to visit her home necessarily flows from her landlord, the landlord may limit that right. *City of Dayton v. Gaessler,* 2d Dist. Montgomery No. 18039, 2000 WL 1879103 (Dec. 29, 2000); *State v. Scott,* 2d Dist. Montgomery No. 19902, 2004-Ohio-271.

{¶ 14} Defendant urges us to follow contrary holdings from other Ohio Appellate Districts, including: *City of Kent v. Hermann,* 11th Dist. Portage Nos. 95-P-0042 and 95-P-0046, 1996 WL 210780 (March 8, 1996)("an individual invited into the rental unit by the tenant could not be guilty of trespassing on the owner's premises even though the owner expressly instructed the person not to come onto the property"); *State v. Hites,* 3rd Dist. Allen No. 1-2000-22, 2000 WL 1114809 (Aug. 8, 2000)("an owner of an apartment complex cannot prohibit guests, invited by tenant, from being present on the property"); and *City of Columbus v. Parks,* 10th Dist. Franklin No. 10AP-574, 2011-Ohio-2164. In *Scott,* we specifically rejected the reasoning of the *Hermann* and *Hites* decisions and reaffirmed our holding in *Gaessler.*

{¶ 15} The theory of the decisions on which Defendant relies appears to be that because the tenant of leased property has the right to the exclusive possession of the premises, *State v. Harper*, 12th Dist. Warren No. CA93-08-066, 1994 WL 81983 (March 14, 1994), and inasmuch as "[t]respass is an invasion of the possessory interest of property, not an invasion of title," *State v. Herder*, 65 Ohio

App.2d 70, 74, 415 N.E.2d 1000 (10th Dist. 1979), the tenant's permission to enter the property cloaks a "trespassed" invitee with the privilege to be on the premises that R.C. 2911.21(A)(3) requires. *Parks.*

{¶ 16} What distinguishes our decisions in *Gaessler* and *Scott* from the decisions upon which Defendant relies is that we consider not only the rights of a particular tenant to invite guests to her home, but also the rights of the other tenants of a multi-unit premises to the quiet enjoyment of their own residences. A landlord has a common law duty to provide for the health and safety of all of his tenants, as well as to ensure their quiet enjoyment of the premises. "'In Ohio, a covenant of quiet enjoyment is implied into every lease contract for realty.'" *Davis v. Sean M. Holley Agency, Inc.,* 2d Dist. Montgomery No. 23891, 2010-Ohio-5278, ¶ 12, quoting *Dworkin v. Paley,* 93 Ohio App.3d 383, 386, 638 N.E.2d 636 (8th Dist. 1994). Allowing one tenant's invitation to trump the landlord's ability to discharge that duty can deprive other tenants of their right to quiet enjoyment.

{¶ 17} Grieshop did not trespass Defendant from Marvin Gardens arbitrarily. He did so following Defendant's arrest at Moore's apartment after a fight with Moore's son, damaging the apartment and resulting in the police being called. To allow the possibility of such behavior to reoccur in the future could put all tenants in danger of their personal safety, and at least presents a significant risk of their inconvenience and annoyance. When an invitee has previously been involved in a disturbance at the property, a property owner or his agent has an obligation to protect all of his tenants' right of quiet enjoyment of the premises. This obligation trumps the right of a particular tenant to invite the offending person to again enter the premises.

{¶ 18} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.

Donovan, J., and Hall, J., concur.

Copies mailed to:

Garrett P. Baker, Esq.
Katherine D. Moellman, Esq.
Hon. John S. Pickrel