[Cite as *State v. Hodge*, 2025-Ohio-4478.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240633 |
| | | TRIAL NO. 24/CRB/16633 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| LAURYNE HODGE, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and appellant discharged.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 9/26/2025 per order of the court.**


**By:**_____
        **Administrative Judge**

[Cite as *State v. Hodge*, 2025-Ohio-4478.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240633 |
| | | TRIAL NO. | 24/CRB/16633 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N* | |
| LAURYNE HODGE, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: September 26, 2025

*Emily Smart Woerner*, City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Joshua Loya,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}    Lauryne Hodge appeals from her conviction for criminal trespassing. In one assignment of error, Hodge contends that her conviction was not supported by sufficient evidence because the State failed to prove beyond a reasonable doubt that Hodge knowingly refused to leave the library, and that she was without privilege to enter and remain on the property. For the following reasons, we reverse the judgment of the trial court and discharge Hodge from further prosecution.

### Factual Background

{¶2}    Lauryne Hodge was charged with criminal trespassing, in violation of R.C. 2911.21(A)(1), for entering a library branch after her privilege to enter all library branches had been revoked. According to the complaint, "staff and police advised Hodge that she was trespassed from all Cincinnati library locations. Hodge refused to leave and [was] taken into custody."

{¶3}    Hodge proceeded to a bench trial. A public safety officer with the library testified that he is the public safety officer for all of the library branches. Although stationed primarily at the main branch, he is dispatched to the other branches as needed. The safety officer encountered Hodge on July 22, 2024, when he was dispatched to the Mt. Washington ("MW") branch for a staff complaint. He met with the branch manager, and the two of them approached Hodge, who was sitting on a bench across from the library branch, to deliver a suspension notice. Hodge refused to accept the notice and told them to leave. Hodge said she would be back and that there were other branches.

{¶4}    The safety officer informed Hodge that she was suspended from all branches, and she said to go away and shouted obscenities at them. The notice explained that she was suspended from all 41 branches for 30 days for disruptive

3

conduct. Hodge told them to leave before she got violent.

{¶5} The safety officer explained that the library has procedures for enforcing standards of behavior. When a behavior standard is violated, the library policy is to issue a warning. After that, if the conduct persists, a suspension notice is issued that also informs the person how long he or she is suspended. If the person entered onto library property during the suspension, another warning would inform the person that he or she could be charged for criminal trespass and that the suspension length would be increased. A subsequent violation would result in a lengthier suspension. The officer did not have a copy of the notice he tried to give to Hodge, but he provided a blank form to the State.

{¶6} On re-direct, the following exchange occurred,

Q. And I just want to ask you, you said that the library has procedures?

A. Mm-hmm.

Q. And is it correct to say that the suspensions are progressive?

A. Yes.

Q. So if she had received prior suspensions, would the notice be more than 30 days?

A. Yes.

Q. And I spoke to a lot of people in a short period of time, but I thought - - is it - - I thought she was suspended for 90 days. Is that part of your knowledge?

A. So the initial suspension is for 30 days. If she is suspended within 365 days of that initial suspension, it will be

increased to 90 days, and then a year, and then so on and so forth, and including within. So if she is back to any of the branches within that 30 days, then it's immediately up to 90 days. If she is afterward - - so if she served the suspension and stayed away, and then she has come back and violated the standard of behavior after that is suspended again, it will be increased to - - again within that 365 days, it will be increased to 90 days and then progressively further out.

Q. Okay. And the question that I have for you is do you know how many days Ms. Hodge was suspended from using the library in total?

A. My knowledge of Ms. Hodge and all events with her essentially begins and ends with the Mount Washington incident[.]

{¶7} The next witness was employed at the Clifton branch library. She had encountered Hodge at the Clifton library on August 15, 2024. The employee conducted a welfare check because someone was in the restroom for a long time. When she knocked on the restroom door, Hodge was in the restroom. On September 4, 2024, the library employee spoke with Hodge in the lower level of the library when Hodge asked for her name. On September 25, the library employee observed Hodge enter the library and proceed to the lower level. She knew that Hodge had been suspended, so she called the police. After two officers responded, the three of them went to the lower level to confront Hodge.

{¶8} When they approached, Hodge was using a library computer. The employee informed Hodge that she was not allowed in the library, and she must leave.

Hodge did not want to leave and became upset.

{¶9} On cross-examination, the library employee confirmed that she did not ask Hodge to leave on August 15 or on September 4. On September 4, the library employee learned something through the computer system to the effect that Hodge was not supposed to be there. The employee confirmed she had no personal knowledge of the information. Based on the computer information she learned on September 4, she called the police when she saw Hodge on September 25.

{¶10} A Cincinnati police officer testified that he responded to the Clifton branch on September 25th for a trespass. When he arrived, he was notified by a library employee that Hodge had been trespassed from the library.

{¶11} When the officer confronted Hodge, she was in the basement working on a computer. He instructed the employee to advise Hodge to leave. Hodge became argumentative, and he informed Hodge that she would be arrested for trespassing if she refused to leave. When Hodge continued to refuse to leave, he arrested her. The officer charged Hodge "for refusing to leave once police and staff members on scene were telling her to leave, not from previous incidents. I'm charging the trespassing for her refusing to leave once an employee of the library was telling her to leave." The incident lasted for five minutes.

{¶12} Hodge testified that she was sitting on a bench outside the MW branch library when she was approached by the branch manager and the security officer. The branch manager spoke with her, and the security officer observed the conversation. The branch manager tried to give her a written notice and informed her that she was being suspended for an incident that had occurred 30 minutes prior. Hodge responded, "Please get out of my face. You followed me off the property. I left the library because I wanted to put distance between yourself and myself. To follow me

off the library premises is just agitating the situation." Hodge was told that she was suspended from the library for 30 days.

{¶13} Hodge confirmed that she used the Clifton branch library on August 15 and September 4 without incident. No one informed her that she could not be in the Clifton branch on those days. When Hodge used the library on September 25, she believed she was allowed to be there. Hodge explained that she had been using the library computer for telehealth appointments every two weeks. That day, Hodge logged into her email but was told to leave less than 10 minutes after her arrival by two police officers.

{¶14} Hodge tried to explain to the police why she was there and that she had filed a grievance based on the encounters she had had at the MW and Clifton branches. Hodges further explained that she filed a grievance with the Ohio Civil Rights Commission on July 23 after the suspension, and had filed grievances between April and September with the district manager of the library.

{¶15} On cross-examination, Hodge testified that she believed the suspension only applied at the MW branch. When asked if she had a "heated discussion" when she was suspended, Hodge responded, "No," and further explained that she told them she felt threatened and triggered by them. Afterwards, Hodge called their supervisors. Hodge did not raise her voice while speaking with the branch manager, but by the time she had spoken with the district manager, her tone was elevated. Hodge admitted that she refused the notice and testified that there was no mention of the suspension applying at all 41 branches. Hodge also admitted that she went to the Clifton branch during the 30-day suspension.

{¶16} When confronted at the Clifton library, Hodge was told by the library employee that she had been suspended for 30 days from the MW branch, and that she

was now suspended for the rest of the year due to an issue at the Clifton branch. The employee left, and Hodge continued conversing with the officers.

{¶17} When asked to leave, Hodge started gathering her things and requested her I.D. Hodge had reserved a study room, which required her to provide her I.D. While retrieving her I.D., she was informed that she would be "trespassed" if she did not give them her name. Hodge responded that she was complying with the officers' request and asked if she should call another officer. Hodge proceeded to call 911, and at that point, one of the officers took her phone and placed her under arrest. The entire encounter lasted five minutes.

{¶18} The trial court found that although the employee of the Clifton branch was initially unaware of the suspension, once she found out, she called the police, and the employee had the authority to ask her to leave. When Hodge refused to leave, she was arrested. The court found her guilty.

{¶19} Hodge now appeals, and in one assignment of error, Hodge contends the conviction was not supported by sufficient evidence because the State failed to prove beyond a reasonable doubt that Hodge knowingly refused to leave the library, and that she did not have privilege to enter and remain on the property.

### Sufficiency of the Evidence

{¶20} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶21} Hodge was convicted of criminal trespass in violation of R.C. 2911.21(A)(1), which provides: "No person, without privilege to do so, shall * * *

8

[k]nowingly enter or remain on the land or premises of another." "To sustain a conviction for criminal trespass, the state must prove the defendant (1) without privilege to do so (2) knowingly (3) entered or remained on (4) the land or premises of another." *State v. Webb*, 2023-Ohio-4817, ¶ 1 (1st Dist.). In general, "a person has a privilege to enter and be upon the public areas of public property." *Id*. at ¶ 19, citing *State v. Shelton*, 63 Ohio App.3d 137 (4th Dist. 1989); *City of Cleveland v. Dickerson*, 2016-Ohio-806, ¶ 21 (8th Dist.). However, "[a] person may commit a criminal trespass onto public property when his or her general privilege to be there has been properly revoked." *Webb* at ¶ 20.

**{¶22}** Hodge contends that the State failed to prove that she lacked the privilege to enter the library on September 25, 2024, because her 30-day suspension, issued on July 22, had ended prior to her use of the library in September. We agree.

**{¶23}** Here, the evidence established that Hodge had been issued a 30-day library ban on July 22, 2024. That ban expired on August 21, 2024. Thus, on September 24, the date of the alleged trespass, Hodge's ban had terminated.

**{¶24}** The library employee called the police due to her belief that Hodge's temporary suspension was still in effect. The library employee informed Hodge that she was currently "trespassed" from the library, but her belief was not based on her personal knowledge. Rather, the employee relied on information she saw on the computer on September 4, 20 days prior to the incident. The library employee did not explain what information she gleaned from the computer, so it is not part of our record. The library safety officer testified that he was only aware of the 30-day ban that he issued in June. Although he testified that a person who violates the ban could be served a notice extending the ban to 90 days, there was no evidence that Hodge had received a notice extending her ban. The State did not establish that Hodge was

suspended on September 24. Thus, the evidence did not support a finding that Hodge had no privilege to enter the library on September 24.

{¶25} The State argues that Hodge's suspension was automatically extended when she violated the 30-day suspension by entering the Clifton branch on August 21. However, the State misconstrues the testimony of the safety officer. Although the safety officer testified that a subsequent violation could result in an increased suspension to 90 days, he testified that an additional warning would be issued informing the person of the increase. The State presented no evidence that Hodge received a subsequent warning.

{¶26} The State further argues that when the Clifton library employee revoked Hodge's privilege by asking her to leave, Hodge committed the offense by refusing to leave. Thus, even if Hodge had a privilege to enter the library branch, the privilege was revoked when the employee asked her to leave. The basis of the trial court's guilty verdict was the fact that Hodge did not leave when the library employee asked her to leave.

{¶27} However, the complaint alleged that the offense was based on the fact that "staff and police advised Hodge that she was trespassed from all Cincinnati library locations." "In a legal sense, being 'trespassed' means a person's permission to be in a particular area has been revoked." *State v. Deckard*, 2023-Ohio-1398, ¶ 27 (2d Dist.), citing *State v. Roark*, 2010-Ohio-2841, ¶ 14 (2d Dist.) ("In this case police had a reasonable suspicion that Defendant was trespassing on DMHA property. Officer Wolpert knew Defendant was on the DMHA trespass list because, just four months earlier, Wolpert had personally trespassed Defendant off of all DMHA property for carrying concealed weapons."); *State v. Scott*, 2004-Ohio-271, ¶ 19 (2d Dist.) ("We emphasize that Fletcher was aware of the DMHA criminal trespass policy and of the

fact that Scott had been given trespass notices, thus barring him from DMHA property, pursuant to that policy."); *State v. McLemore*, 2011-Ohio-243, ¶ 4 (2d Dist.) (noting that officers found a field-interview card stating the defendant had "been trespassed" from a BP station, meaning he had been informed that he was no longer allowed on the property); *Gessner v. Vore*, 2008-Ohio-3870, ¶ 6 (2d Dist.) (citing a "trespass notice" advising an individual "that he was no longer authorized to enter and/or remain on the premises"). Thus, the charge was based on Hodge's entry into the library after her privilege was revoked and not on her refusal to leave when asked by the library employee.

**{¶28}** Moreover, with respect to public property, "the privilege to enter or remain upon specific property, once granted or conferred, may not be withdrawn arbitrarily or capriciously." *State v. Staley*, 2021-Ohio-3086, ¶ 17 (1st Dist.), citing *Columbus v. Andrews*, 1992 Ohio App. LEXIS 829, *7 (10th Dist. Feb. 27, 1992). As the *Andrews* Court explained,

> There must be some reasonable or legitimate basis for withdrawing the privilege. This is particularly true with regard to persons charged with the supervision of public property. As they are not the actual owners of the property, they have no right to exclude persons from the property for any reason or no reason at all. As public officers, they must act reasonably and within the scope of their authority. When a person charged with the supervision of public property acts unreasonably or exceeds the scope of his or her authority, the purported revocation of the privilege to enter the property is void and of no further effect.

*Andrews* at *30-31. "Whether there was a reasonable and legitimate basis to revoke

11

the privilege is dependent on the facts and circumstances of each individual case." *Webb*, 2023-Ohio-4817, at ¶ 20 (1st Dist.).

{¶29} In this case, the library employee revoked Hodge's privilege on September 24 due to her belief that Hodge's temporary suspension was still in effect. Notably, there was no testimony to establish that the library employee had the authority to revoke Hodge's privilege to enter the library branch, and no evidence that the purported revocation complied with the library policy of presenting a notice when the privilege has been revoked. Additionally, as previously discussed, Hodge's 30-day privilege revocation ended on August 21, 2024. The State presented no evidence of an additional revocation or suspension. Based on these facts, the library employee had no reasonable or legitimate basis to order Hodge to leave, and this "purported revocation of the privilege to enter the property is void and of no further effect." *Andrews* at *31. Thus the conviction could not be based on the library employee's purported revocation of Hodge's privilege to enter and remain in the library.

{¶30} Accordingly, we sustain Hodge's first assignment of error.

## Conclusion

{¶31} Having sustained Hodge's sole assignment of error, we reverse the judgment of the trial court and discharge Hodge from further prosecution.

Judgment reversed and appellant discharged.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.

12