The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith*, 150 Ohio App.3d 45, 2002-Ohio-5994.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19230.

Decided Nov. 1, 2002.

Patrick J. Bonfield, Acting Director of Law, Deirdre Logan, Chief Prosecutor, and Addie J. King, Assistant City Prosecutor, for appellee.

Arvin S. Miller, Montgomery County Assistant Public Defender, for appellant.

FAIN, Judge.

{¶ 1}  Defendant-appellant Damon B. Smith appeals from his conviction and sentence for disorderly conduct.  He contends that the trial court erred when it denied his motion for a judgment of acquittal, because his actions resulting in the charge are protected under the First Amendment to the United States Constitution.

{¶ 2}  We conclude that there is insufficient evidence in this record pertaining to an essential element of disorderly conduct.  Therefore, we find it unnecessary to reach Smith's First Amendment argument.  We conclude that the trial court did err when it denied Smith's motion for a judgment of acquittal.  The judgment of the trial court is reversed, and Smith is ordered discharged.

## I

{¶ 3}  Police received information that a vehicle matching Smith's car was carrying or dropping off illegal drugs in the area and that the owner of the vehicle often carried a handgun.  Armed with this information, Officer Timothy Braun pulled Smith over and asked him to exit his car.  Smith asked why he had been stopped.  Braun replied that he was conducting an investigation.  Smith then exited his car.  Braun patted him down for weapons, placed him in the back of Braun's cruiser, and returned to run a check of the vehicle.  At this time, Officer David House arrived on the scene to back up Braun.

{¶ 4}  Remaining in character, Smith was less than fully responsive to Braun's questioning, and continued to demand an answer as to why he had been pulled over.  But Smith eventually answered Braun's questions.  During this time, Braun discovered that Smith had a valid driver's license and no outstanding warrants for his arrest.  While waiting for a canine drug search, Smith told Braun that he wanted to speak to his lieutenant or sergeant.  Braun called his sergeant, Matthew Carper, over to speak with Smith, and they engaged in a brief conversation.  After the drug search produced no evidence, Braun released Smith.

{¶ 5}  Instead of getting in his car and leaving the scene, Smith stood out in the middle of the street, throwing up his hands, and making repeated loud comments that he had to "call the police on the police."  Braun and other officers repeatedly told Smith to get in his vehicle, but Smith refused.  He was then warned that he could be arrested for disorderly conduct.  Instead of leaving, Smith continued asking why he had been arrested and telling the officers that this was ridiculous.  Several customers of nearby establishments stopped to watch the scene unfold.  Smith eventually started to get into his car, as if to leave, but then got out again, and began asking why he had been stopped.  He was then arrested for disorderly conduct.  Following a bench trial, he was convicted and fined $100 and ordered to pay court costs.

{¶ 6}  From his conviction and sentence, Smith appeals.

## II

{¶ 7}  Smith's sole assignment of error is as follows:

{¶ 8}  "The trial court erred in denying Mr. Smith's Rule 29 motion for acquittal at the close of the state's case."

{¶ 9}  Motions for acquittal pursuant to Crim.R. 29 address the sufficiency of the state's evidence.  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.  Under Crim.R. 29, a motion for acquittal may be granted only if the

evidence is insufficient to sustain a conviction for the offense charged. *State v. Dortch* (Oct. 15, 1999), Montgomery App. No. 17700, 1999 WL 819569. "[P]ursuant to Crim.R.29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. In reviewing the court's determination, we must construe the evidence in favor of the state. *Dortch,* supra.

{¶ 10} Smith was convicted of a violation of R.C. 2917.11, Ohio's disorderly conduct statute, which provides:

{¶ 11} "(A) *No person shall recklessly cause inconvenience, annoyance, or alarm to another by* doing any of the following:

{¶ 12} " * * *

{¶ 13} "(2) *Making unreasonable noise* or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person * * *." (Emphasis added.)

{¶ 14} Smith argues that the state failed to present sufficient evidence on all the necessary elements of disorderly conduct. Specifically, Smith contends that he could not be convicted of disorderly conduct for loud outcries unless the state proved that he used "fighting words." Thus, since Smith's words were not uttered to inflict injury or provoke the average person to breach the peace, his statements are protected under the First Amendment and cannot be the basis for his conviction. To support his contention, he cites *Norwell v. Cincinnati* (1973), 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170. Smith's analysis depends upon his conclusion that he was charged with disorderly conduct because of the content of his speech, rather than its volume. The state disputes this contention, contending that he was charged solely because the loudness of his speech was causing inconvenience, annoyance, or alarm. We find it unnecessary to resolve this dispute, because we conclude that the evidence in the record, even when viewed in a light most favorable to the state, fails to prove beyond reasonable doubt that Smith's loud speech caused anyone inconvenience, annoyance, or alarm.

{¶ 15} The elements of disorderly conduct by making unreasonable noise are (1) recklessly, (2) causing inconvenience, annoyance, or alarm to another, (3) by making unreasonable noise. The state presented testimony from two police officers establishing that Smith was repeatedly warned to stop yelling, that he failed to do so, and that his shouting drew a crowd. But the prosecution failed to show that Smith recklessly caused another inconvenience, annoyance, or alarm based upon his yelling. There was no testimony from any of the members of the crowd, and one of the officers testified that no one complained to him about

Smith's noise level. Furthermore, none of the officers testified that based on his unreasonable noise, he felt inconvenienced, annoyed, or alarmed. While under some situations, it might be reasonable to infer that an individual's yelling in an outdoor, public place may cause another inconvenience, annoyance, or alarm, we conclude that this is not a reasonable inference when the individual is an officer who must handle rowdy individuals on a daily basis. If the police officers were annoyed, it seems more likely, based upon the evidence in this record, that they were annoyed because Smith refused to follow their direction to get in his car and leave, not that they were annoyed at the loudness of his remarks.

{¶ 16} At oral argument, the prosecution also made references to the fact that patrons at one of the nearby establishments, a drive-thru, were inconvenienced when cars going through the drive-thru stopped to watch the events unfold. But this contention is not supported by the record. The only testimony presented relating to the alleged inconvenience actually suggests that these patrons did not impede the flow of traffic in the drive-thru, thereby inconveniencing fellow patrons:

{¶ 17} "A. [Officer House] * * * I also was watching people going through the line at the Lexington drive-thru which was directly behind where Officer Braun's cruiser was. These people would stop at the drive-thru and *instead of going through, they would stop in the parking lot momentarily* to watch what was going on in the street." (Emphasis added.)

{¶ 18} Perhaps anticipating a potential problem with the sufficiency of evidence presented on this point, the state cites numerous cases to demonstrate that it presented sufficient evidence on the issue, including (1) *State v. Trammel* (Jan. 22, 1999), Montgomery App. No. 17196, 1999 WL 22884, (2) *Fairborn v. Grills* (June 9, 1994), Greene App. No. 92 CA 92, 1994 WL 247122, and (3) *State v. Fant* (1992), 79 Ohio App.3d 458, 607 N.E.2d 548. But *Trammel* made no finding regarding whether the defendant's threat to turn Rottweiler dogs loose on the officers constituted disorderly conduct. Thus, that case has no value for analyzing the one before us. The other two cases are not only distinguishable, but each actually supports the conclusion we reach in this case. For instance, *Fairborn* involved a neighbor calling the police to stop the shouting of another neighbor in the neighborhood. The neighbor who called was clearly annoyed or inconvenienced enough to contact authorities. Here, the only testimony presented material to the issue of annoyance or inconvenience was one officer's admission that no one complained that he or she was disturbed by the incident. In *Fant,* a defendant's conduct was deemed to be disorderly because he returned to the scene of a hostile arrest after being escorted away twice. One of the factors that we focused on in *Fant* to affirm the conviction was an officer's testimony that he feared physical harm because of the difficulty he was having controlling the

arrested individual, and that the defendant's conduct made the situation even more difficult. Again, we have no testimony in the case before us evidencing that Smith's conduct resulted in the officers' apprehension of potential harm.

{¶ 19}   Since the state failed to prove this element beyond a reasonable doubt, Smith was entitled to a judgment of acquittal, and his assignment of error is sustained.

### III

{¶ 20}   Smith's sole assignment of error having been sustained, we reverse the judgment of the trial court and order that Smith be discharged.

*Judgment reversed.*

GRADY and FREDERICK N. YOUNG, JJ., concur.