[Cite as *State v. Tingler*, 2017-Ohio-4158.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 16 BE 0015 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ZACHERY TINGLER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the County Court,
Western Division, of Belmont County,
Ohio
Case No. 15 CRB 00880-01

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiff-Appellee:     Atty. Daniel P. Fry
Belmont County Prosecutor
Atty. Kevin Flanagan
Chief Assistant Prosecuting Attorney
Atty. Helen Yonak
Assistant Prosecuting Attorney
147-A West Main Street
St. Clairsville, Ohio  43950

For Defendant-Appellant:     Atty. Timothy Young
Ohio Public Defender
Atty. Stephen P. Hardwick
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio  43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated:  June 5, 2017

WAITE, J.

**{¶1}** Appellant Zachary Tingler appeals his conviction for criminal trespass in the Belmont County Court, Western Division. The issues raised on appeal are whether there was sufficient evidence to support the conviction and whether the conviction is against the manifest weight of the evidence. Based on our review of the record, Appellant's conviction is not against either the manifest weight or sufficiency of the evidence. The evidence reflects that Appellant was not an owner or permanent resident of the premises involved, but the boyfriend of a minor child ("Anna") living in the house. Appellant was asked to leave the residence by Anna's adult brother Art's fiancée, Brandy Neace ("Neace") and other adults in the home. Neace also provided unrebutted testimony that the Belmont County Juvenile Court requested that she monitor Anna while the child's mother, Eugenia Berring ("Berring") was not available. Therefore, Appellant's assignments of error are without merit and the judgment of the trial court is affirmed.

Factual and Procedural Background

**{¶2}** The following facts were derived from the record. The house in question was owned by Anna's father who was recently deceased. Anna's parents never married and the home was allegedly bequeathed to Anna and her brother, although the matter was still pending before probate court at the time the incident occurred. Prior to her father's death, Anna lived there along with her parents and her brother. Appellant was allowed to stay at the residence intermittently, leaving for periods of time and then reappearing to stay for a few days. On December 1, 2015, Appellant was at the house with Anna. He had been staying there since he was

released from jail and asked to leave his own mother's house sometime in January of 2015. Neace was also staying there along with Anna and Berring. Neace had been staying at the residence for approximately two weeks at the suggestion of the Belmont County Juvenile Court to monitor Anna while her mother, Berring, was unavailable. Apparently, Anna's relationship with Berring was somewhat tumultuous, and while they remained in the house together, Anna required supervision during periods of her absences. On December 1, 2015, Neace witnessed Appellant conduct two drug transactions in the driveway of the home. Berring was not at home at the time. When Appellant entered the house and went upstairs, Neace followed him and an argument between Neace and Appellant ensued, wherein she informed him that his conduct was not allowed and that Anna could not give him permission to stay there since she was a minor. Soon Anna became involved in the verbal altercation and Neace informed her that Appellant would have to leave. Neace returned downstairs to join Art and their guest. Neace overheard an argument between Anna and Appellant and soon Anna called for them to come upstairs to get Appellant out. There is some dispute at trial as to whether Appellant had a gun in his hand at that time, but there was no mention of this gun in the report given to the police. Art told Appellant to leave. Appellant objected, saying that he needed his things. After more arguing between Art, Neace, Anna and Appellant, Appellant eventually left the house.

{¶3} The following morning Neace went to wake Anna for school and discovered the door to Anna's bedroom was locked. Anna refused to come out and Neace could hear talking in the room. After Neace and Berring discussed the

situation, they decided to contact the sheriff's department. A deputy arrived a short time later. Berring greeted the officer at the door and informed him that Appellant was upstairs in her minor daughter's bedroom and that he did not have permission to be in the home. The deputy proceeded upstairs and knocked on the bedroom door. It was locked and no one answered, but the officer could hear noises inside. Berring advised that there was an adjoining door to the room from Berring's room. The door was unlocked and the officer entered the room to find Appellant and Anna laying on the bed together. The officer also saw guns and smelled marijuana. After Anna and Appellant packed most of his belongings into garbage bags, the officer escorted Appellant out of the home. Neace testified that Appellant threatened to burn the house down as he was leaving.

**{¶4}** Appellant was charged with possession of marijuana, in violation of R.C. 2925.11(A), (C)(3)(a); menacing, in violation of R.C. 2903.22(A); and criminal trespassing, in violation of R.C. 2911.21(A)(1). Appellant pleaded not guilty, and a bench trial was held on April 5, 2016. Appellant was found guilty on all counts. On the criminal trespassing conviction, Appellant was sentenced to thirty days in jail with fifteen days suspended as well as two years of probation. Appellant filed this appeal on the sole issue of his conviction for criminal trespassing.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The evidence was insufficient to support a conviction for trespassing because the State did not prove that Zachery Tingler lacked a privilege

to be in the home. R.C. 2911.21(A)(1); Fifth and Fourteenth Amendments to the United States Constitution. T.p. 7-46.

{¶5} A conviction which is based on insufficient evidence amounts to a denial of due process. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997) citing *Tibbs v. Florida,* 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The sufficiency of the evidence is a question of law addressing the legal adequacy of the evidence; it is the legal standard applied to determine whether a case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *Thompkins* at 386; *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

{¶6} In analyzing a sufficiency of the evidence argument, the evidence of record and all rational inferences that can be drawn from the evidence must be evaluated in a light most favorable to the prosecution. *State v. Goff,* 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). The conviction will not be reversed on sufficiency grounds unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* at 138. The reviewing court does not examine the credibility of the witnesses nor weigh the evidence. *Id.* at 139.

{¶7} R.C. 2911.21(A)(1), criminal trespass, provides that, "[n]o person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another[.]"

**{¶8}** To sustain a conviction for this offense, the state must show that Appellant remained on the premises without privilege or permission to be there. Appellant contends that there was insufficient evidence to convict him of criminal trespass because Anna never told him to leave. He claims that Berring asked him to leave but later changed her mind and that no one else had the authority to ask him to leave. Appellant's contention that only Berring possessed the ability to revoke Appellant's privilege to remain in the home and his recitation of the evidence is somewhat mischaracterized. Berring did allow Anna, a minor, to have overnight guests and did allow Appellant to periodically stay in the house after his own mother threw him out. However, that was in November of 2015. The incident in question happened on December 1, 2015. Berring was not at the house on that day. Berring also testified that Appellant did not have permanent permission to stay; she had told Appellant on a number of occasions before this incident that he had to leave the premises. (Trial Tr., pp. 14-16.) Neace did have permission to stay at the residence and was the adult in charge of Anna in Berring's absence. Neace testified that after she witnessed what she perceived to be two drug transactions conducted by Appellant in the driveway of the premises on December 1, 2015, Appellant was ordered out of the house. When he sneaked back into the premises, she notified Berring, who agreed that the police should be called to remove Appellant. That testimony was never rebutted by Appellant. Neace also testified that during an unruly child proceeding involving Anna before the Belmont County Juvenile Court, Neace was asked by the court to monitor the child when Berring was unavailable. While

there was no journal entry or other documentation admitted into evidence to support this testimony, this was the reason given for the fact that Neace was living in the home and it was also unrebutted by Appellant. Further, although Berring may have allowed Appellant to stay at the house for some period of time, that permission was clearly not permanent or irrevocable. The evidence at trial shows there was concern about drug activity as well as combative conduct by Appellant which raised concern about him remaining in the home, and which eventually lead to the police escorting him off of the premises after he remained behind locked doors with Anna in her bedroom. This record reflects that evidence was presented which, if believed showed that Appellant entered or remained on the land or premises of another without privilege to do so. The state met its burden of production for criminal trespass and presented evidence and testimony that is legally sufficient law to support the verdict. *Smith* at 113. Thus, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

Zachery Tingler's conviction for trespassing was against the manifest weight of the evidence. R.C. 2911.21(A)(1). T.p. 746.

**{¶9}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Id.*

{¶10} When reviewing a manifest weight of the evidence argument, a reviewing court must examine the entire record, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, 389. Only in exceptional circumstances will a conviction be reversed as against the manifest weight of the evidence. *Id.* This strict test for manifest weight acknowledges that credibility is generally the province of the factfinder who sits in the best position to accurately assess the credibility of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶11} As noted, Appellant was convicted of criminal trespass pursuant to R.C. 2911.21. If a complainant asks a guest to leave, has the authority to ask the guest to leave, and the guest does not immediately leave the premises, then the guest is trespassing. *City of Steubenville v. Johnson,* 7th Dist. No. 96JE17, 1997 WL 467582, *3 (Aug. 7, 1997). Moreover, evidence that a guest has been asked to leave repeatedly and refuses to make an effort to do so supports a conviction for criminal trespass. *Id.*

{¶12} Appellant raises two arguments. He claims that he was not a guest, because he was permitted to stay there and the premises was listed as his residence on his driver's license. He also argues that no one other than Berring, herself, had the authority to ask him to leave and she had allowed him to stay in the past. We first

note that these two arguments are mutually exclusive: if Appellant was not a guest, whether Berring had granted him permission to stay would be irrelevant. Moreover, his argument that Berring had granted him permission to remain at the house in the past would be made a nullity by her revocation of permission, and Berring testified that she wanted him out. Appellant argues that Neace was not a bona fide guardian for Anna and, therefore, lacked authority to remove him from the home. However, Neace testified that she was temporarily living in this home because the juvenile court requested she monitor Anna while her mother was unavailable, and that testimony went unrebutted. Additionally, Neace was the fiancée of Art. It was Neace, along with Art, who responded to Anna's calls for help that night to evict Appellant from the premises following Anna's argument with Appellant.

{¶13} Appellant generally argues that all of the testimony against him was simply unbelievable. He claims that both Anna and Berring allowed him to stay in the house. This overlooks the testimony that even Anna asked that he be removed on December 1, 2015. And while the child apparently allowed him to return, he had no permission to do so from the adults who resided there. Berring, Neace and the police officer at the scene all testified that Appellant was asked to leave the premises and had refused. The officer testified that Appellant locked himself with Anna in her bedroom and refused to leave. Moreover, the record shows that Appellant crawled through the window at night to gain entry back into the home after he was removed by Neace and Art. Surely an individual asserting a right to be on the premises would

utilize a door, rather than sneak through a window to enter the home. Appellant's own conduct demonstrates his recognition that he was not lawfully a resident.

{¶14} The trier of fact is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and utilize these observations to determine credibility of the witnesses. *Seasons Coal Company, Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, if the evidence is susceptible to more than one interpretation, the reviewing court is bound to interpret it consistently with the verdict and judgment. *Id.* Here the trial court, as trier of fact, was in the best position to judge the credibility of the witnesses and weigh testimony given by witnesses. The trier of fact found the witnesses credible and, given our standard of review, we must give proper deference to the trial court's finding. Appellant's second assignment of error is without merit and is overruled.

{¶15} In conclusion, Appellant's conviction for criminal trespass was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant was not a resident of the home but a guest. He was asked more than once to leave the premises and refused. Finally, Appellant did leave but eventually, surreptitiously, gained entry back into the home. For these reasons, Appellant's assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

DeGenaro, J., concurs.

Robb, P.J., concurs.